UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 350 WEST ASH URBAN HOME, INC., *et al.*,<br><br>            Plaintiffs,<br>    vs.<br><br>EVEREST INDEMNITY INSURANCE COMPANY., *et al.*,<br><br>            Defendants. | Case No. 13-cv-18-W(BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT EVEREST'S MOTION TO DISMISS [DOC. 25]** |

On November 16, 2012, Plaintiffs 350 West Ash Urban Home, Inc. ("Urban Homes"), 350 W.A. LLC ("350 W.A."), B&H Property Systems, Inc. ("B&H"), and David A. Blackburn commenced this action against Defendants Everest Indemnity Insurance Company ("Everest") and the Insurance Company of the State of Pennsylvania ("ISOP") in the San Diego Superior Court. Thereafter, ISOP removed this action to this Court. Everest now moves to dismiss portions of Plaintiffs' First Amended Complaint ("FAC"). Plaintiffs oppose.

The Court decides the matter on the papers submitted and without oral argument. See Civ. L. R. 7.1(d.1). For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Everest's motion to dismiss.

## I. BACKGROUND

According to the FAC, on May 15, 2003, 350 W.A. acquired a commercial office building at 350 West Ash Street in San Diego. (FAC ¶ 10.) In preparation to convert the property into condominiums, 350 W.A. obtained two Owner Controlled Insurance Program ("OCIP") insurance policies, commonly known as "wrap" policies. (Id. ¶ 11.) Three-fifty W.A. purchased a primary OCIP policy from Everest and an excess OCIP policy from ISOP. (Id.) The policy from Everest had a $2 million limit, inclusive of defense and indemnity, and the policy from ISOP had a limit of $3 million. (Id.)

The Everest policy is a "burning limits" policy, meaning that the available policy limit of $2 million "would be depleted by defense expenses, including attorney fees and costs paid to defend 'insureds,' as defined under the policy, against claims asserting an entitlement to damages covered by the Everest policy." (FAC ¶ 12.) In addition, "ISOP would only begin defending (and/or reimbursing Plaintiffs for defense costs incurred in their defense) claims against Plaintiffs only upon s showing by Everest that [Everest] actually paid its $2 million limits in defense and/or indemnity payments, such that the Everest policy had to be 'exhausted' before ISOP would begin defending Plaintiffs." (Id. ¶ 13.)

After 350 W.A. began the conversion process, Urban Homes purchased the property to complete it. (FAC ¶ 14.) Urban Homes was added as a named insured under both the Everest and ISOP policies. (Id. ¶ 15.) Mr. Blackburn, as a managing member of 350 W.A. and minority shareholder in Urban Homes, is also insured under both policies. In addition, B&H—initially engaged by 350 W.A. and later by Urban Homes to manage construction of the property and to market the units for sale—was named as an insured under both policies. (Id. ¶16.) Highland Home Builders, Inc. ("Highlands"), the contractor hired to perform construction, is also insured under both policies. (Id.)

//
//

In 2006, Highlands filed a lawsuit against 350 W.A. and Urban Homes, alleging a failure to pay for all of the work performed under its contract and change orders. (FAC ¶ 17.) In response to Highlands' complaint, 350 W.A. and Urban Homes filed a cross-complaint alleging property damage as a result of negligence and other wrongful conduct. (Id. ¶ 18.) That lawsuit ("Contractor Action"), entitled Highland Home Builders, Inc. v. 350 W.A. LLC, No. GIC864390, was litigated between 2006 and 2011. (Id.)

In April 2011, the parties settled the Contractor Action. (FAC ¶ 19.) Plaintiffs agreed to accept $800,000 for their claims against Highland for damages covered by the Everest policy. (Id. ¶ 20.) They also agreed to pay Highlands $378,000 to resolve Highlands' claims against Plaintiffs. (Id. ¶ 21.) Plaintiffs allege that during the Contractor Action, Everest misrepresented the remaining limits on the Everest policy, and based on those misrepresentations, "Plaintiffs accepted far less [to settle with Highlands] than they otherwise would have." (Id. ¶ 19.)

In 2010, Plaintiffs were named as defendants in another lawsuit, entitled 350 West Ash Association v. 350 West Ash Urban Homes, Inc., No. 37-2010-00094257-CU-CD-CTL ("HOA Action"). (FAC ¶ 22.) In this action, the 350 West Ash Homeowners Association ("HOA") sought damages covered by the terms of the Everest and ISOP policies. (Id.) When served with the HOA Action, Plaintiffs tendered their defense and indemnity to Everest and ISOP pursuant to their respective policies. (Id.) After tender, but before Everest appointed counsel, Plaintiffs "reasonably and necessarily incurred post-tender attorney fees and defense costs in defense of the HOA Action" through their own counsel. (Id.) These fees and costs allegedly totaled $191,741.75. (Id. ¶ 26.) Before the Contractor Action settled, Plaintiffs demanded reimbursement of those post-tender fees and costs, but did not receive payment. (Id. ¶ 23.) After settling the Contractor Action, Plaintiffs again demanded reimbursement from Everest, only to be told that Plaintiffs' entitlement to those fees and costs was included in its settlement of the Contractor Action. (Id. ¶ 25.) Plaintiffs disagreed,

pointing out that the settlement agreement contained no release of the post-tender claims and again forwarded all of its defense fees and costs to Everest in December 2011. (Id.) As of the time when the FAC was filed, Plaintiffs had not yet received reimbursement from Everest. (Id. ¶ 26.)

In July 2012, Everest informed Plaintiffs and Highlands—all of whom were insured under the two policies—that Everest's policy was "nearing exhaustion" and that Everest "would cease defending Plaintiffs and the Highland entities upon exhaustion of the policy." (FAC ¶ 29.) In light of this, Plaintiffs tendered their continuing defense to ISOP. (Id.) In response, ISOP informed Plaintiffs that ISOP disputed: (1) whether the Everest policy was actually exhausted; and (2) whether the Everest policy was "properly" exhausted. (Id. ¶ 30.) On these two bases, ISOP has refused to defend or indemnify Plaintiffs. (Id.)

On October 10, 2013, Plaintiffs filed the FAC. Everest now moves to dismiss Plaintiffs' causes of action for fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing / insurance bad faith for failure to state a claim upon which relief can be granted. Plaintiffs oppose.

## II.   LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact as true and construe them in light most favorable to the nonmoving party. Cedars-Sanai Med. Ctr. v. Nat'l League of Postmasters of U.S., 497 F.3d 972, 975 (9th Cir. 2007). Material allegations, even if doubtful in fact, are assumed to be true. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) (internal

1  quotation marks omitted).  In fact, the court does not need to accept any legal
2  conclusions as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

3  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
4  detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his
5  'entitlement to relief' requires more than labels and conclusions, and a formulaic
6  recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555
7  (internal citations omitted).  Instead, the allegations in the complaint "must be enough
8  to raise a right to relief above the speculative level." Id.  Thus, "[t]o survive a motion
9  to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state
10 a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (citing Twombly,
11 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual
12 content that allows the court to draw the reasonable inference that the defendant is
13 liable for the misconduct alleged." Id.  "The plausibility standard is not akin to a
14 'probability requirement,' but it asks for more than a sheer possibility that a defendant
15 has acted unlawfully." Id.  A complaint may be dismissed as a matter of law either for
16 lack of a cognizable legal theory or for insufficient facts under a cognizable theory.
17 Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

18 Generally, courts may not consider material outside the complaint when ruling
19 on a motion to dismiss.  Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d
20 1542, 1555 n.19 (9th Cir. 1990).  However, documents specifically identified in the
21 complaint whose authenticity is not questioned by parties may also be considered.
22 Fecht v. Price Co., 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statutes on
23 other grounds).  Moreover, the court may consider the full text of those documents,
24 even when the complaint quotes only selected portions.  Id.  It may also consider
25 material properly subject to judicial notice without converting the motion into one for
26 summary judgment.  Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).
27 //
28 //

## III. DISCUSSION

### A. Plaintiffs Fail to Cure the Defect in Their Claim for Fraud.

Everest contends that Plaintiffs fail to allege rescission of the settlement agreement on which their claim for fraud is based. (Def.'s Mot. 11:14–15:12.) The Court agrees with Everest.

In the September 30, 2013 order, this Court found that "Under Village Northridge and the statutory rescission scheme provided by Cal. Civ. Code §§ 1688-93, Plaintiffs' fraud claim fails because Plaintiffs have not alleged that they are seeking rescission of the underlying settlement agreement, nor have they alleged that they restored all consideration received under the settlement agreement to Everest." (Sept. 30, 2013 Order 11:8–14 (referencing Vill. Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co., 50 Cal. 4th 913 (2010)).)

Plaintiffs do not allege in the FAC that they seek to rescind the settlement agreement. (See FAC ¶¶ 35–38.) Instead, they elect to assert a claim for fraud in the FAC that is virtually identical to that contained in the original complaint. In opposition to Everest's motion, Plaintiffs argue that, "[w]ith all due respect to the court, this interpretation [applying Northridge] . . . was wrong." (Pls.' Opp'n 4:5–6.) Neither the FAC nor the opposition to the instant motion present any new facts or law that would justify reconsideration of the previous order. Further, Plaintiffs have not filed a motion for reconsideration, which is the most appropriate means of putting forth such an argument.

Accordingly, the Court **GRANTS** Everest's motion to dismiss as to fraud.

### B. Plaintiffs Fail to Sufficiently Allege Facts to State a Claim for Breach of Contract.

Everest moves to dismiss Plaintiffs' beach-of-contract claim on the grounds that Plaintiffs allege in the FAC that the Everest policy was exhausted. (Def.'s Mot. 19:5–20:12.) Everest argues that it "has no duty to reimburse Plaintiffs for any alleged

prior unpaid defense fees and costs to the extent that they exceed the remaining policy limits of the Everest Policy." (Id. (citing FAC ¶ 30).)

In response, Plaintiffs assert that they reached a settlement agreement in the HOA Action "for the 'remaining limits' on the Everest and ISOP policies, after defense costs had been fully paid," and that "Everest chose to turn over the remainder of its limits to a third party (the Plaintiff in the HOA Action)" without first reimbursing Plaintiffs for their attorneys' fees and costs. (Pls.' Opp'n 13:5–14:5 (emphasis removed).) These allegations do not appear in the FAC. (See FAC ¶¶ 39–43.) In short, Plaintiffs allege new facts in their opposition brief that do not appear in the FAC.

For the purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court limits its review to the allegations of material facts contained in the operative complaint. See Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998) (citing Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996)). "In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir.1993)). Therefore, the Court will not consider those facts absent from the FAC and appearing only in Plaintiffs' opposition brief.

Moving on, in California, a "cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1367 (2010) (citing Careau & Co. v. Sec. Pac. Bus. Credit, Inc. 222 Cal. App. 3d 1371, 1388 (1990)). The duty of an insurer to reimburse for defense costs stemming from a burning-limits policy, such as the one at issue in this matter, terminates when the limit of the policy is reached. See Aerojet-Gen. Corp. v. Transp. Indem. Co., 17 Cal. 4th 38, 76 n.29 (1997).

Here, Plaintiffs allege in the FAC that they "understand—based on information and belief—that the continued expense of the HOA Action eventually exhausted the remaining limits on the policy." (FAC ¶ 30.) Because they allege that the Everest policy is exhausted, Plaintiffs fail to state a plausible claim that Everest breached its contract with Plaintiffs by failing to reimburse them up to the limits of the policy. See Iqbal, 556 U.S. at 678. Therefore, the Court **GRANTS** Everest's motion as to breach of contract.

### C. Everest Fails to Show Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing / Insurance Bad Faith Is Defective.

"It is clear that if there is no *potential* for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 36 (1995) (citing Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1151 (1990). However, "the principle that no breach of the covenant of good faith and fair dealing can occur if there is no coverage or potential for coverage under the policy is quite different from the argument that no breach of the implied covenant can occur if there is no breach of an express contractual provision." Brehm v. 21st Century Ins. Co., 166 Cal. App. 4th 1225, 1236 (2008). "[B]reach of a specific provision of the contract is not a necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing . . . . [E]ven an insurer that pays the full limits of its policy may be liable for breach of the implied covenant if improper claims handling causes detriment to the insured." Id. (quoting Schwartz v. State Farm Fire & Cas. Co., 88 Cal. App. 4th 1329, 1339 (2001)) (internal quotation marks omitted). "The principle that no breach of the covenant of good faith and fair dealing can occur if no benefits are due under the

1  policy applies only when no potential for coverage exists under the policy." Schwartz,
2  88 Cal. App. 4th at 1339.

> In essence, the covenant is implied as a *supplement* to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract. Thus, when benefits are due an insured, delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because it [sic] frustrates the insured's *primary* right to receive the benefits of his contract—i.e., prompt compensation for losses. Absent that primary right, however, the *auxiliary* implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of its contractual underpinnings.

Love, 221 Cal. App. 3d at 1153.

Everest maintains that "a bad faith claim cannot be maintained unless policy benefits are due in accord with the policy in which the duty of good faith is rooted." (Def.'s Mot. 19:22–24.) The essence of Everest's contention is that because Plaintiffs allege in the FAC that the Everest policy is *now* exhausted—even if there may have been the potential for coverage at the time of the alleged breach—Plaintiffs may not now bring suit for breach of the implied covenant of good faith and fair dealing.

Everest's interpretation of the law is incorrect. As noted above, a California insurer that pays up to the limits of its policy may still be liable for breach of the implied covenant of good faith and fair dealing if improper claims handling has harmed the insured. See Schwartz, 88 Cal. App. 4th at 1339. Everest does not contend that there *was not* the potential for coverage under the policy at the time of the alleged delay tactics that form the basis for Plaintiffs' claim. Instead, Everest focuses on the purported concession on the part of Plaintiffs that the policy limits are *now* exhausted. (Def.'s Mot. 17:16–20:12.) Whether the Everest policy is presently exhausted is not dispositive as to whether the potential for coverage existed at the time of the alleged breach of the implied covenant of good faith and fair dealing. Because the dispositive issue is whether the potential for coverage existed at the time of the alleged breach of

the implied covenant, Everest fails to show that Plaintiffs' claim for the breach of the implied covenant of good faith and fair dealing is defective. See Waller, 11 Cal. 4th at 36; Schwartz, 88 Cal. App. 4th at 1339.

Accordingly, the Court **DENIES** Everest's motion as to the breach of the implied covenant of good faith and fair dealing / insurance bad faith.[1]

## IV.  CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Everest's motion to dismiss. (Doc. 25.) Specifically, the Court **GRANTS WITH LEAVE TO AMEND** Everest's motion insofar as Plaintiffs' claims for fraud and breach of contract, and **DENIES** the motion insofar as Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing / insurance bad faith. If Plaintiffs choose to file a Second Amended Complaint, they must do so no later than **May 13, 2014**.

**IT IS SO ORDERED.**

DATE: April 22, 2014

_____
**HON. THOMAS J. WHELAN**
United States District Court
Southern District of California

---

[1] Plaintiffs once again present new facts in their opposition brief relating to the settlement of the HOA Action. These allegations do not appear in the FAC. Thus, the Court will not consider these allegations for the purpose of this Rule 12(b)(6) motion to dismiss. See Pareto, 139 F.3d at 699.